UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
ORLANDO DIVISION

**RONALD WARD, individually and on behalf of all those similarly situated,**

            **Plaintiffs,**

**-vs-**                              **Case No. 6:18-cv-459-Orl-41GJK**

**FLORIDA BC HOLDINGS, LLC d/b/a SYNERGY EQUIPMENT,**

            **Defendant.**

_____

## REPORT AND RECOMMENDATION

This cause came on for consideration without oral argument on the following motion:

| | |
|---|---|
| **MOTION:** | **CLASS REPRESENTATIVE'S RENEWED MOTION FOR CONDITIONAL CLASS CERTIFICATION WITH INCORPORATED MEMORANDUM OF LAW (Doc. No. 33)** |
| **FILED:** | September 17, 2018 |
| | **THEREON** it is **RECOMMENDED** that the motion be **GRANTED in part** and **DENIED in part**. |

### I.   BACKGROUND.

This is the second FLSA collective action filed in this Court by Sales Coordinators who were or are employed by Defendant. *See Reese v. Florida BC Holdings, LLC*, Case No. 6:17-cv-1574-ORL-41GJK. Defendant has twelve stores, two in Georgia and ten in Florida (collectively the "Stores"). Doc. No. 34-1 at 1.

In *Reese*, this Court conditionally certified an opt-in class pursuant to 29 U.S.C. § 216(b) for Sales Coordinators in two of Defendant's Stores (Orlando and Daytona Beach) who were allegedly improperly classified as exempt employees under the FLSA for purposes of overtime pay. *Reese*, at Doc. Nos. 41, 49.   The plaintiff in *Reese* sought opt-in class certification for all of Defendant's Stores, but the Court found that Reese failed to present sufficient evidence to support a class that encompassed all the Stores as he only worked in Orlando and Daytona Beach.   *Reese*, Case No. 6:17-cv-1574-ORL-41GJK, Doc. No. 41 at 7 ("Plaintiff provides no evidence that any Sales Coordinators in Defendant's eight other Florida locations or two Georgia locations are interested in joining this litigation.").

Ronald Ward ("Plaintiff") worked as a Sales Coordinator for Defendant from March 2016 to September 2017 in Defendant's St. Augustine, Jacksonville, and Daytona Beach Stores. Doc. No. 33-1.  On March 27, 2018, Plaintiff, individually and as class representative, filed a Complaint alleging Defendant violated the Fair Labor Standards Act ("FLSA") by failing to pay him overtime. Doc. No. 1.  The allegations in the Complaint mirror the allegations in the *Reese* Complaint in that Plaintiff alleged he was improperly classified as an exempt employee under the FLSA for purposes of overtime pay.  Doc. No. 1 at 4.  Plaintiff also alleges that, as a Sales Coordinator, his overtime wages were improperly calculated after Defendant reclassified all Sales Coordinators as hourly employees in November 2016.  Doc. No. 1 at 4-5. On this basis, Plaintiff proposes to establish two classes: one that is a misclassification class, just like the misclassification class in *Reese*, but encompassing all of Defendant's Stores; and one that is based on the miscalculation of overtime wages for all of Defendant's Sales Coordinators.  Doc. No. 1 at 5-6.  On May 15, 2018, Joshua Kennedy and Jerry Jenkins (collectively "Opt-in

Plaintiffs") filed their consents to join this litigation. Doc. Nos. 18, 19. Opt-In Plaintiff Kennedy opted in to only one of Plaintiff's two proposed classes because he has already opted into the misclassification class established in *Reese*. Doc. No. 18-1.

On June 27, 2018, Plaintiff filed a motion for conditional class certification. Doc. No. 24. That motion was denied on July 10, 2018, and the Court indicated that Plaintiff could file a renewed motion after the parties made a good faith effort to settle and filed their settlement report. Doc. No. 25. On September 6, 2018, the parties filed a joint status regarding settlement indicating that mediation ended in impasse. Doc. No. 31.

On September 17, 2018, Plaintiff filed Class Representative's Renewed Motion for Conditional Class Certification with Incorporated Memorandum of Law (the "Renewed Motion"). Doc. No. 33. Plaintiff included his declaration, a declaration of Jay Reese, pay records reflecting the erroneous payment of overtime wages, and a notice for each of the classes he sought to certify (the "Proposed Notices") as exhibits to the Renewed Motion. Doc. Nos. 33-1-33-5. Defendant filed a response to the renewed motion on October 1, 2018 (the "Response"). Doc. No. 34. Plaintiff filed a Reply to Defendant's Response (the "Reply"). Doc. No. 39.

Plaintiff also filed a motion for consolidation with *Reese* on October 25, 2018. Doc. No. 40. Plaintiff argues that there is a substantial threat of inconsistent adjudications of common factual and legal issues if the matters proceed separately. Doc. No. 40 at 3. Plaintiff also argues that consolidation would eliminate duplicative discovery. Doc. No. 40 at 4. Defendant filed a response arguing that the discovery deadline has passed in *Reese* such that any delay caused by consolidation of the cases would be prejudicial. Doc. No. 41 at 3-4.

There are two allegations central to this action. First, that Defendant's Sales Coordinators were misclassified as exempt in violation of the FLSA. Second, that when they were reclassified as hourly employees, Defendant's Sales Coordinators were not properly paid overtime wages, which was caused by errors regarding the rate of pay and hours worked. Doc. Nos. 1 and 33. Plaintiff and Opt-In Plaintiffs aver these errors were the result of policies common to all of the Sales Coordinators at Defendant's Stores. Doc. No. 33 at 12-14; Doc. No. 18-1 at ¶ 8; and Doc. No. 19-1 at ¶ 8.

Plaintiff and Opt-In Plaintiffs worked in Defendant's Jacksonville, St. Augustine, Orlando and Daytona Beach Stores as Sales Coordinators. Doc. Nos. 33-1 at 1; 18-1 at 2; 19-1 at 2. Plaintiff and Opt-In Plaintiffs also carried the same job title, Sales Coordinator, and had the same job duties including working the inside counter of Defendant's Stores. Doc. Nos. 33-1 at 2; 18-1 at 2; 19-1 at 2. First, Sales Coordinators were all paid a salary and commission, and were not paid overtime because they were classified as exempt employees. Doc. Nos. 33-1 at 2; 18-1 at 2; 19-1 at 2. Later, all Sales Coordinators were reclassified as hourly employees by Defendant. Plaintiff and Opt-In Plaintiffs aver that, upon reclassifying them as hourly employees, Defendant failed to include all the hours they worked in any given week and miscalculated the overtime rate to be paid by failing to include commissions and their guaranteed compensation. Doc. Nos. 33 at 14-15; 33-1 at 2; 18-1 at 2; and 19-1 at 2.

Plaintiff states he spoke to many Sales Coordinators who were dissatisfied with how they were being paid including a Sales Coordinator in Pompano Beach, named Roy, and one in Miami, named Danny. Doc. No. 33-1 at 2. Plaintiff states that he "expects that Roy, Danny, and other current and former Sales Coordinators of [Defendant] will join this litigation if they are

given notice of it and an opportunity to join it." Doc. No. 33-1 at ¶ 17. Defendant argues that neither Opt-In Plaintiff is sufficiently similar to Plaintiff to support a finding of adequate interest, not Kennedy, because he already opted into the *Reese* class, and not Jenkins because he was never a salaried employee. Doc. No. 34 at 2. Defendant argues that Plaintiff and Opt-In Plaintiffs are not similarly situated to all of Defendant's Sales Coordinators because the "day to day work performed by Sales Coordinators can vary greatly based on a variety of factors, including supervisor, location, team, personal preference, number of other Sales Coordinators at location, and experience." Doc. No. 34 at 4.

Defendant argues that hardly any Sales Coordinators joined the *Reese* class, in fact only one, so that there is no indication further notices would net a larger class of Sales Coordinators. Doc. No. 34 at 10. With respect to responses to the class in *Reese*, Plaintiff argues that the numbers reflect a high desire to opt-in once notice is received. Doc. No. 39 at 3. Plaintiff argues that six Sales Coordinators received notice based on the *Reese* conditional class. Doc. No. 39 at 3. Plaintiff notes that five of the six have pursued misclassification claims including Reese, Celeya, Kennedy, Lee and Ward. Doc. No. 39 at 3.

Defendant also argues that it identified the error in calculating its Sales Coordinators' overtime, corrected the problem by including Sales Coordinators' commissions, and it attempted to pay all affected employees the shortfall plus an equal amount of liquidated damages.[2] Doc. No. 34 at 2. Plaintiff and Opt-In Plaintiffs did not accept these payments. Doc. No. 34 at 2.

Defendant argues that sending opt-in notice to people who have already been paid would simply invite frivolous claims. Doc. No. 34 at 2. Thus, with respect to the Improper Rate of Pay

---

[2] It appears the error was caused by failing to include commissions when determining the hourly rate of pay. *Id.* Defendant maintains it has mooted the issue prospectively by no longer paying Sales Coordinators commissions.

and Hour Claim, Defendant argues that the matter has essentially been resolved by its inclusion of Sales Coordinators' commissions in its calculation of overtime and repayment of double the amount due each Sales Coordinator. Doc. No. 34 at 5-6. As such, Defendant argues Plaintiff's claim is moot. Doc. No. 34 at 7.

Defendant objects to the Proposed Notices and contends that Plaintiff's description of the lawsuit is biased in his favor because Defendant's position is only described in one sentence while Plaintiff's is described in more detail. Doc. No. 34 at 12. Defendant contends the notices could be construed as a judicial endorsement of this action. *Id.* Defendant maintains that its position regarding this case should "be stated with clarity and equal emphasis as Plaintiff's position." *Id.*

In Plaintiff's Reply, Plaintiff points out that after Defendant discovered it was miscalculating overtime it paid more than $40,000 to more than ten Sales Coordinators. Doc. No. 39-1 at 5, 7. Plaintiff also argues that this acknowledgement of the miscalculation does not render this case moot because Plaintiff has also alleged Defendant's failure to include all the hours the Sales Coordinators worked beyond forty in a given week. Doc. No. 39 at 2. Further, Plaintiff argues that there has been "absolutely no demonstration that the inclusion of the commissions and the method used to calculate the overtime rate of pay used by [Defendant] meets the requirements of the FLSA." *Id.* Plaintiff's Motion also indicates that a question remains regarding the inclusion of the guarantee in determining the rate of pay as well. Doc. No. 33 at 14-15.

## II. MOTION FOR CONDITIONAL CLASS CERTIFICATION.

Pursuant to 29 U.S.C. § 216(b) of the FLSA, Plaintiff asks the Court to conditionally certify the following classes:

> All Employees of Synergy who were: (1) employed by Synergy as Sales Coordinators during the preceding three years; (2) were classified as exempt from the FLSA; and (3) worked more than forty (40) hours in a work week without being paid proper overtime compensation.
>
> All Employees of Synergy who: (1) are or were employed by Synergy as Sales Coordinators since November 2016; (2) worked more than forty hours in a work week; and (3) did not receive proper overtime because: (a) Synergy failed to include all weekly remuneration in Sales Coordinator's regular rate of pay when calculating the overtime rate and (b) failed to include all hours worked when calculating overtime.

Doc. No. 33 at 4. Plaintiff refers to these classes as the "Misclassification Class" and the "Improper Rate of Pay and Hours Class," respectively. Doc. No. 33 at 9. For consistency, the Court will do the same, and will refer to them collectively as the "Proposed Classes." The Misclassification Class mirrors the conditional class approved in *Reese* except that it proposes to encompass Sales Coordinators who worked at all of Defendant's Stores. Doc. No. 33 at 10. The Improper Rate of Pay and Hours Class is similarly proposed to apply to Defendant's current and former Sales Coordinators who worked at Defendant's Stores during the relevant time period. Doc. No. 33 at 10.

### A. Legal Standard

There is a two-step procedure for whether a FLSA collective action should be certified: 1) the notice stage; and 2) the decertification stage. *Morgan v. Family Dollar Stores, Inc.*, 551 F.3d 1233, 1260 (11th Cir. 2008). The Motion falls under the notice stage. Doc. No. 33 at 5. The

notice stage is when "a district court determines whether other similarly situated employees should be notified." *Morgan*, 551 F.3d at 1260.

At the notice stage, "[a] plaintiff has the burden of showing a 'reasonable basis' for his claim that there are other similarly situated employees." *Id.* (quoting *Anderson v. Cagle's, Inc.*, 488 F.3d 945, 952 (11th Cir. 2007)). The standard for determining similarity at the notice stage is fairly lenient, not particularly stringent, and not heavy. *Id.* at 1261.

In addition to determining whether there are similarly situated employees to the plaintiff, the court must also "satisfy itself that there are other employees of the department-employer who desire to 'opt-in' . . . ." *Dybach v. State of Fla. Dep't of Corr.*, 942 F.2d 1562, 1567–68 (11th Cir. 1991).

### B. Adequate Interest

Plaintiff has the burden to provide a reasonable basis supporting his position that other aggrieved individuals exist in the broad putative class. *Hart v. JPMorgan Chase Bank, N.A.*, No. 8:12-CV-00470-T-27, 2012 WL 6196035, at *4 (M.D. Fla. Dec. 12, 2012). Plaintiff asks the Court to conditionally certify a class of all of Defendant's Sales Coordinators for all of Defendant's Stores.

Collectively, Plaintiff and Opt-In Plaintiffs state that they worked in Defendant's Jacksonville, St. Augustine, Orlando and Daytona Beach stores as Sales Coordinators. Doc. No. 33-1 at 1; 18-1 at 2; 19-1 at 2. Plaintiff and Opt-In Plaintiffs also state that they each carried the same job title, Sales Coordinator, had the same job duties, including working the inside counter of Defendant's facilities, were all paid a salary and commission, and were not paid overtime because they were classified as exempt employees. Doc. No. 33-1 at 2; 18-1 at 2; 19-1 at 2.

Each of them also state that when Defendant reclassified Sales Coordinators as hourly employees it improperly failed to include all the hours they worked in a given week and miscalculated the amount of overtime to be paid.  Doc. No. 33-1 at 2; 18-1 at 2; and 19-1 at 2.

Plaintiff also indicates he has spoken to many Sales Coordinators who were dissatisfied with how they were being paid including a Sales Coordinator in Pompano Beach, Roy, and one in Miami, named Danny.  Doc. No. 33-1 at 2.  Plaintiff states that he "expects that Roy, Danny, and other current and former Sales Coordinators of [Defendant] will join this litigation if they are given notice of it and an opportunity to join it."  Doc. No. 33-1 at ¶ 17.

Defendant argues that neither Opt-In Plaintiff is sufficiently similar to Plaintiff to support a finding of adequate interest, not Kennedy, because he already opted into the *Reese* class, and not Jenkins because he was never a salaried employee.  Doc. No. 34 at 2.  Defendant does not address the other two Sales Coordinators identified by Plaintiff or the fact that Plaintiff himself worked at three different stores and could attest to whether the Sales Coordinators in those stores would be interested in joining the action.  Instead, Defendant argues that Plaintiff is the only member of his putative class and that the allegations of just one employee are insufficient to support certification of any class.  Doc. No. 34 at 9.

Defendant also argues that hardly any Sales Coordinators joined the *Reese* class, in fact only one, so that there is no indication further notices would net a larger class of Sales Coordinators.  Doc. No. 34 at 10.  With respect to responses to the class in *Reese*, Plaintiff argues that the numbers reflect a high desire to opt-in once notice is received.  Doc. No. 39 at 3.  Plaintiff argues that six Sales Coordinators received notice based on the *Reese* conditional class.

Doc. No. 39 at 3.  Plaintiff notes that five of the six have pursued misclassification claims including Reese, Celeya, Kennedy, Lee and Ward.  Doc. No. 39 at 3.

Based on the foregoing, it is recommended that the Court find that Plaintiff sufficiently demonstrates the requirement for issuance of notice that there are other employees in Defendant's Stores that may wish to opt in to the FLSA action for both the Proposed Classes. *See Guerra v. Big Johnson Concrete Pumping, Inc.*, 2006 U.S. Dist. LEXIS 58484, at *10 (S.D. Fla. May 17, 2006) (where at least one other co-worker desires to join the suit, plaintiff's contention of adequate interest is raised beyond one of pure speculation); *Belloso v. Asplundh Tree Expert Co. et al.*, 6:17-cv-02020-40-GJK Doc. No. 76 (M.D. Aug. 24, 2018) (finding at notice stage plaintiff sufficiently alleged adequate interest for a separate region where there was a common policy and evidence of interest in two other regions within the state); *Stuven v. Tex. De Braz. Tampa Corp.*, 2013 U.S. Dist. LEXIS 22240, at *8-10 (M.D. Fla. Feb. 19, 2013) (declarations others will want to join can be sufficient, particularly where other opt-in plaintiffs are present).  Here, Plaintiff has alleged a common policy or practice with respect to both Proposed Classes, Plaintiff has demonstrated interest as to three of the stores himself, and has averred there is interest in at least two other stores, and that he believes other Sales Coordinators from the remaining Stores will also be interested.  Plaintiff has also provided two Opt-In Plaintiffs for the Improper Wage Class.  Unlike *Reese*, there is now evidence that Sales Coordinators from at least half of Defendant's Stores may be interested in joining the Proposed Classes and Plaintiff has provided evidence of common policies for all Sales Coordinators, particularly with respect to compensation, that would support class certification.

However, while Plaintiff satisfies his burden related to adequate interest, there is a wrinkle in that two of the Stores subject to class certification for the Misclassification Class, Orlando and Daytona Beach, are already part of the misclassification class in *Reese*. Thus, it would be improper to have two competing classes at those stores. While the Court acknowledges that there is currently a motion to consolidate pending which seeks to consolidate this case with *Reese*, at this point it would be duplicative, inefficient, and would create a potential for inconsistent outcomes to include those two stores within the newly certified Misclassification Class.

### C.     Similarly Situated

Plaintiffs must be "'similarly situated' with respect to their job requirements and with regard to their pay provisions . . . ." *Dybach*, 942 F.2d at 1567–68. Plaintiff has the burden of demonstrating similarity. *Kelley v. Taxprep1, Inc.*, No. 5:13-CV-451-OC-22PRL, 2014 WL 10248251, at *2 (M.D. Fla. Apr. 2, 2014). Similar does not equal identical. *Hipp v. Liberty Nat. Life Ins. Co.*, 252 F.3d 1208, 1217 (11th Cir. 2001). Job duties, pay provisions, and whether the employees were subjected to a common policy that is the basis for the alleged FLSA violation are factors to be considered in determining whether Plaintiff is similarly situated to the proposed class. *Allen v. Hartford Fire Ins. Co.*, No. 6:16-CV-1603-ORL-37KRS, 2017 WL 3701139, at *7 (M.D. Fla. Aug. 25, 2017).

Again, Plaintiff raises two central allegations related to Defendant's Sales Coordinators. First, Sales Coordinators were misclassified as exempt in violation of the FLSA. Second, that when they were reclassified, Sales Coordinators were not properly paid overtime, both with respect to rate of pay and calculation of hours. Doc. Nos. 1 and 33. Plaintiff and Opt-In

Plaintiffs aver these were policies common to all of Defendant's Sales Coordinators. Doc. No. 33 at 12-14; Doc. No. 18-1 at ¶ 8; and Doc. No. 19-1 at ¶ 8.

With respect to job duties, Plaintiff argues that this Court has already determined Defendant's Sales Coordinators are similarly situated. *Reese*, Case No. 6:17-cv-1574-ORL-41GJK, Doc. No. 41 at 9. Further, Plaintiff contends that all Sales Coordinators have "the same job duty—handling the inside counter of the [Defendant's] location where they worked." Doc. No. 33 at 13.

Plaintiff and Opt-In Plaintiffs assert that their primary duty and the primary duty of all the other Sales Coordinators that they knew and came in contact with was handling the inside counters of Defendant's locations where they worked. Doc. Nos. 33-1, 32-1, 18-1, and 19-1. The Declaration of Kelly Beem, Defendant's Human Resources Manager, confirms that Sales Coordinators shared many of the same responsibilities and, prior to November 16, 2016, were paid a combination of salary and commission even though the Sales Coordinators' tasks "can vary based on numerous factors." Doc. No. 34-1 at 1-2.

Defendant argues that Plaintiff and Opt-In Plaintiffs are not similarly situated to all of Defendant's Sales Coordinators because the "day to day work performed by Sales Coordinators can vary greatly based on a variety of factors, including supervisor, location, team, personal preference, number of other Sales Coordinators at location, and experience." Doc. No. 34 at 4.

With respect to pay provisions, Plaintiff argues that all Sales Coordinators were first paid a salary, commission, and a guarantee, but classified as exempt from overtime, and then all Sales Coordinators were paid as hourly employees. Doc. No. 33 at 13. Thus, all Sales Coordinators were subject to the same compensation practices.

Plaintiff argues that Defendant's alleged misclassification of its Sales Coordinators and its failure to properly calculate their overtime pay when the Sales Coordinators became hourly employees were common practices. Doc. No. 33 at 14. Plaintiff and Opt-In Plaintiff's averments also support these arguments. Doc. Nos. 33-1, 18-1, and 19-1. Plaintiff has also included pay records from Defendant which Plaintiff argues demonstrate Defendant did not include commissions or the guarantee in the rate of pay when calculating Sales Coordinators' overtime wages. Doc. Nos. 33 at 14-15, 33-2, and 33-3. Plaintiff also notes that Defendant has conceded this was the case as it sought to remedy one of the two identified errors after the initial motion for class certification was filed and offered lump sum payments to all affected Sales Coordinators to correct it. Doc. No. 33 at 15.

While Defendant concedes that when it began paying Sales Coordinators overtime it miscalculated the overtime wages, it also argues that rectifying this error renders the second proposed class moot. Doc. No. 34 at 2. Defendant states that Defendant attempted to pay all affected employees the shortfall plus an equal amount of liquidated damages. Doc. No. 34 at 2. Defendant offers nothing in support of this contention, and Defendant acknowledges that Plaintiff and Opt-In Plaintiffs did not accept these payments. Doc. No. 34.

Defendant argues that sending opt-in notice to people who have already been paid would simply invite frivolous claims. Doc. No. 34 at 2. Thus, with respect to the Improper Rate of Pay and Hour Claim, Defendant argues that the matter has essentially been resolved by its inclusion of Sales Coordinators' commissions in its calculation of overtime and repayment of double the amount due each Sales Coordinator. Doc. No. 34 at 5-6. As such, Defendant argues Plaintiff's claim is moot. Doc. No. 34 at 7.

In Plaintiff's Reply, Plaintiff points out that after Defendant discovered it was miscalculating overtime it paid more than $40,000 to more than ten Sales Coordinators. Doc. No. 39-1 at 5, 7. Plaintiff also argues that this acknowledgement of the miscalculation does not render this case moot because Plaintiff has also alleged Defendant's failure to include all the hours the Sales Coordinators worked beyond forty in a given week. Doc. No. 39 at 2. Further, Plaintiff argues that there has been "absolutely no demonstration that the inclusion of the commissions and the method used to calculate the overtime rate of pay used by [Defendant] meets the requirements of the FLSA." Doc. No. 39 at 2. Plaintiff's motion also indicates that a question remains regarding the inclusion of the guarantee in determining the rate of pay as well. Doc. No. 33 at 14-15.

It appears that the Sales Coordinators are similarly situated to Plaintiff. *See Simpkins v. Pulte Home Corp.*, No. 6:08-CV-130-ORL-19DAB, 2008 WL 3927275, at *7 (M.D. Fla. Aug. 21, 2008) (finding that members of proposed class were similarly situated where there were "commonalities among the relevant job duties" and defendant's "own management has determined that these employees are similar enough to be classified under the same exemptions for purposes of complying with the FLSA.").

"The arguments regarding whether . . . individual issues predominate are properly addressed under the more stringent stage-two analysis." *Allen v. Hartford Fire Ins. Co.*, No. 6:16-CV-1603-ORL-37KRS, 2017 WL 3701139, at *8 (finding that plaintiffs met the similarly situated requirement for conditional certification, even though defendant asserted the administrative exemption). At the conditional certification stage, the merits of the parties' claims are not weighed; instead, the plaintiff's burden focuses on their allegations of similarity, not

14

refuting the defendant's arguments and defenses. *Id.* at *7. In *Allen*, the Court rejected the defendant's arguments against conditional certification because "they concern defenses that appear to be individual to each Plaintiff." *Id.* at *8.

Plaintiff has met his burden of demonstrating that his job duties are sufficiently similar to those of the proposed class in all the Defendant's Stores. Plaintiff and Opt-In Plaintiffs aver that their, and other Sales Coordinators, primary job duty was to handle the inside counter. Doc. Nos. 33-1, 18-1 and 19-1.

In terms of pay provisions, Defendant first paid all Sales Coordinators on a salary basis but then, due to anticipated changes in FLSA regulations, shifted the entire job class to an hourly wage that allowed for overtime. Doc. No. 34-1 at 3. Even though the Sales Coordinators were paid different amounts for their salaries and different rates for their commissions, this does not preclude a finding of similarity regarding pay provisions. *See Russell v. Life Win, Inc.*, No. 8:11-CV-2802-T-26TBM, 2014 WL 7877787, at *3 (M.D. Fla. Apr. 23, 2014) (defendant's argument that differences in commission rates, seniority, and hours worked applicable to an exemption from overtime pay under the FLSA may result in individual inquiries attacks the merits of the claim, which are not weighed "in determining whether potential opt-in plaintiffs may be similarly situated.'"). As Plaintiff presents evidence that the Sales Coordinators were paid a salary plus commission, the proposed collective class's pay provisions are similarly situated to Plaintiff's. As Plaintiff presents evidence, and Defendant concedes, all Sales Coordinators' compensation was shifted to hourly wages and all Sales Coordinators' pay was reviewed for overtime miscalculations.

The final factor for the Court to consider in determining "similarly situated"—whether the employees were subjected to a common policy that is the basis for the alleged FLSA violation—also weighs in Plaintiff's favor. *Allen v. Hartford Fire Ins. Co.*, No. 6:16-CV-1603-ORL-37KRS, 2017 WL 3701139, at *7.  Plaintiff alleges that Defendant misclassified Plaintiff and its Sales Coordinators as exempt from the FLSA's overtime provisions and also alleges that both overtime hours and overtime rates were miscalculated when the Sales Coordinators were paid hourly. Doc. No. 33, 33-1. Defendant corroborates this allegation by asserting as an affirmative defense that the Sales Coordinators are exempt from the FLSA's overtime provisions under the executive, administrative, or professional capacity exemption in 29 U.S.C. § 213(a)(1). Doc. No. 5 at 7.  Further, Defendant's admission that it paid more than ten Sales Coordinators over $20,000 in additional overtime based upon its improper calculations also corroborates the presence of a common policy with respect to overtime pay.  Doc. No. 39-1 at 5, 7.

Plaintiff sufficiently demonstrates at the conditional certification stage that he is similarly situated to Sales Coordinators in each of Defendant's Stores  in terms of job duties, pay provisions, and common policies allegedly violating the FLSA's overtime provisions. Accordingly, it is recommended that the Court grant Plaintiff's request that the Proposed Classes be conditionally certified as to Defendant's ten remaining Stores for the Misclassification Class and as to all Stores for the Improper Rate of Pay and Hours Class.

**D.     Notice**

The Proposed Notices are attached as exhibits to the Motion.  Doc. Nos. 33-4 and 33-5. Defendant raises one substantive objection – that Plaintiff's description of the lawsuit is biased in his favor because Defendant's position is only described in one sentence while Plaintiff's is

described in more detail.  Doc. No. 34 at 12.  Defendant contends the Proposed Notices could be construed as a judicial endorsement of this action.  *Id.*  Defendant maintains that its position regarding this case should "be stated with clarity and equal emphasis as Plaintiff's position." *Id.* However, Defendant offers no proposed language for doing so.  Upon review, the Court does not find the Proposed Notices are reasonably susceptible to being construed as suggesting judicial endorsement of Plaintiff's claims.

The only amendment required for the Proposed Notices is to conform the class description in the Misclassification Class notice so that it reflects the class only applies to Sales Coordinators "at any store other than the Orlando or Daytona Beach stores."  Otherwise, it is recommended that the Proposed Notices be approved.

### III. <u>CONCLUSION</u>.

Accordingly, it is **RECOMMENDED** that the Motion (Doc. No. 24) be **GRANTED IN PART AND DENIED IN PART** as follows:

1. That the Court conditionally certify the following classes:

    All Employees of Synergy who were: (1) employed by Synergy as Sales Coordinators during the preceding three years **at any store other than the Orlando or Daytona Beach stores**; (2) were classified as exempt from the FLSA; and (3) worked more than forty (40) hours in a work week without being paid proper overtime compensation.

    All Employees of Synergy who: (1) are or were employed by Synergy as Sales Coordinators since November 2016; (2) worked more than forty hours in a work week; and (3) did not receive proper overtime because: (a) Synergy failed to include all weekly remuneration in Sales Coordinator's regular rate of pay when calculating the overtime rate and (b) failed to include all hours worked when calculating overtime.

2. That Plaintiff's counsel be appointed as class counsel;

3. That Defendant be directed to provide Plaintiff with the names, job titles, dates of employment, last known addresses, telephone numbers, and email addresses for each individual in each class within ten days of the Court's order on the Motion;

4. That Plaintiff send a notice to members of the classes in the forms provided with the following revision: in the Misclassification Class, the class be limited as directed by the Court to include only Sales Coordinators "at any store other than the Orlando or Daytona Beach stores.";

5. That in all other respects, the Motion be **DENIED**.

<u>**NOTICE TO PARTIES**</u>

The parties have fourteen days from this date to file written objections to the Report and Recommendation's factual findings and legal conclusions. Failure to file written objections waives that party's right to challenge on appeal any unobjected-to factual finding or legal conclusion the district judge adopts from the Report and Recommendation. 11th Cir. R. 3-1.

**RECOMMENDED** in Orlando, Florida, on December 20, 2018.

_____
GREGORY J. KELLY
UNITED STATES MAGISTRATE JUDGE

Copies to:
Counsel of Record
Unrepresented Parties